No. 07-4C
(Judge Wheeler)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LAUDES CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

**DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

FRANKLIN E. WHITE, JR
Assistant Director

J. REID PROUTY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530
Tele: 202-305-7586
Fax: 202-514-7969

May 30, 2007

Attorneys for Defendant

# TABLE OF CONTENTS

**PAGE(s)**

DEFENDANT'S BRIEF . . . . . 1

STATEMENT OF THE ISSUES . . . . . 1

STATEMENT OF THE CASE . . . . . 3

I. Nature Of The Case . . . . . 3

II. Statement Of Facts . . . . . 5

ARGUMENT . . . . . 5

I. The Standard Of Review . . . . . 6

II. No Actions Related To The Phase I Contract Are Currently Subject To The Tucker Act . . . . . 7

III. All Actions Regarding The Phase I Contract Taken Subsequent To June 30, 2004, Are Attributable To The Government Of Iraq, Not The United States, And Thus Not Within The Ambit Of The Tucker Act . . . . . 10

IV. Laudes's Claims Regarding Alleged Contracts-Implied-In-Fact Prior To The Execution Of The Phase I Contract Are Not Cognizable . . . . . 12

V. Laudes's Claims Alleging The Existence Of Implied-In-Fact Contracts Promising That It Would Be Awarded Additional Contracts And Funding, And That The United States Was Estopped From Not Providing It Money Are Precluded By Law . . . . . 13

VI. Count VI Of Laudes's Complaint, Estoppel, Must Be Dismissed For Lack Of Jurisdiction . . . . . 15

VII. Count V Of Laudes's Complaint, Fraud In The Inducement, Is Outside Of This Court's Jurisdiction Because It Sounds In Tort . . . . . 16

VIII. Count V Of Laudes's Complaint Must Be Dismissed Because It Seeks The Remedy Of A Contract Implied-In-Law . . . . . 18

IX. Count V Of Laudes's Complaint, Fraud In The Inducement, Is Unsupportable Because Limitations Upon Future Authority To Modify DFI-Funded Contracts Were Publicly Known At The Time The Phase I Contract Was Entered . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

**CASES** **PAGE(s)**

AINS v. United States,
365 F.3d 1333 (Fed. Cir. 2004) . . . . . . . . . . 7, 8

ASEDAC v. Panama Canal Comm'n,
453 F.3d 1309 (11th Cir. 2006) . . . . . . . . . . 8, 9

Aetna Cas. and Sur. Co. v. United States,
655 F.2d 1047 (Ct. Cl. 1981) . . . . . . . . . . 16

Alaska v. United States,
32 Fed. Cl. 689 (1995), appeal dismissed, 86 F.3d 1178 (Fed. Cir. 1996) . . . . . . . . . . 6

Anderson v. Liberty Lobby Inc.,
477 U.S. 242 (1986) . . . . . . . . . . 7

Atlas Corp. v. United States,
895 F.2d 745 (Fed. Cir. 1990) . . . . . . . . . . 12, 13

Awad v. United States,
301 F.3d 1367 (Fed. Cir. 2002) . . . . . . . . . . 18

Badgley v. United States,
31 Fed. Cl. 508 (1994) . . . . . . . . . . 18

Brown v. United States,
105 F.3d 621 (Fed. Cir. 1997) . . . . . . . . . . 18

Burtt v. United States,
176 Ct. Cl. 310, 314 (1966) . . . . . . . . . . 17

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . 6

Conley v. Gibson,
355 U.S. 41 (1957) . . . . . . . . . . 6

Curtis v. United States,
168 F. Supp. 213 (Ct. Cl. 1958), cert. denied, 361 U.S. 843 (1959) . . . . . . . . . . 7

**TABLE OF AUTHORITIES**
-continued-

**CASES** **PAGE(s)**

D.F.K. Enters., Inc. v. United States,
45 Fed. Cl. 280 (1999) . . . . . . . . . . 18

D.V. Gonzalez Electric & General Contractors, Inc. v. United States,
55 Fed. Cl. 447 (2003) . . . . . . . . . . 18

Eliel v. United States,
18 Cl. Ct. 461 (1989) . . . . . . . . . . 14

Empresas Electronics Walser, Inc. v. United States,
650 F.2d 286 (Ct. Cl. 1980) . . . . . . . . . . 14

Englert v. United States,
38 Fed. Cl. 366 (1997) . . . . . . . . . . 18

Filtration Development Co. v. United States,
60 Fed. Cl. 371 (2004) . . . . . . . . . . 14

Hercules, Inc. v. United States,
516 U.S. 417 (1996) . . . . . . . . . . 16

ITT Fed. Support Services v. United States,
531 F.2d 522 (Ct. Cl. 1976) . . . . . . . . . . 12

L'Enfant Plaza Properties, Inc. v. United States,
645 F.2d 886 (Fed. Cir. 1981) . . . . . . . . . . 17

L'Enfant Plaza Properties, Inc. v. United States,
668 F.2d 1211 (Ct. Cl. 1982) . . . . . . . . . . 8, 11

McCormick v. United States,
227 Ct. Cl. 661 (1981) . . . . . . . . . . 17

McNutt v. General Motors Acceptance Corp. of Indiana,
298 U.S. 178 (1936) . . . . . . . . . . 6

Office of Personnel Management v. Richmond,
496 U.S. 414 (1990) . . . . . . . . . . 13, 14, 15

**TABLE OF AUTHORITIES**
-continued-

**CASES** **PAGE(s)**


Perri v. United States,
340 F.3d 1337 (Fed. Cir. 2003) . . . . . . . . . . 19

Reynolds v. Army & Air Force Exch. Serv.,
846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . 6

Sinclair v. United States,
56 Fed. Cl. 270 (2003) . . . . . . . . . . 16

Smithson v. United States,
847 F.2d 791 (Fed. Cir. 1988) . . . . . . . . . . 17, 18

Somali Development Bank v. United States,
508 F.2d 817 (Ct. Cl. 1974) . . . . . . . . . . 17

Spirit Leveling Contractors v. United States,
19 Cl. Ct. 84 (1989) . . . . . . . . . . 6

Sweats Fashions, Inc. v. Pannill Knitting, Inc.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . 6

Transcountry Packing Co. V. United States,
568 F.2d 1333 (Ct. Cl. 1978) . . . . . . . . . . 17, 18

United States, ex rel. DRC v. Custer Battles,
444 F. Supp. 2d. 678 (E.D.Va. 2006) . . . . . . . . . . 7

United States v. Neustadt,
366 U.S. 696 (1961) . . . . . . . . . . 16

Utah Power and Light Company v. United States,
243 U.S. 389 (1917) . . . . . . . . . . 13

Wood v. United States,
961 F.2d 195 (Fed. Cir. 1992) . . . . . . . . . . 18

Zhengxing v. United States,
71 Fed. Cl. 732 (2006) . . . . . . . . . . 16

**TABLE OF AUTHORITIES**
-continued-

**STATUTES** **PAGE(s)**


10 U.S.C. § 2304 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28 U.S.C. § 1491(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16

28 U.S.C. § 1502 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

31 U.S.C. § 1304(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

41 U.S.C. § 612(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LAUDES CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07-4C |
| v. | ) | |
| | ) | (Judge Wheeler) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OR,
IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rules 12(b)(1), 12(b)(6), and 56 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the complaint be dismissed in part for lack of jurisdiction, or failure to state a claim upon which relief may be granted or, in the alternative, that the Court enter partial summary judgment in favor of the Government.[1] In support of our motion, we rely upon the complaint, this brief, and the accompanying Defendant's Proposed Findings of Uncontroverted Facts.

DEFENDANT'S BRIEF

STATEMENT OF THE ISSUES

1. Whether counts I through VIII of the complaint should be dismissed because no appropriated funds are available to pay contractual damages for a contract made by the Coalition Provisional Authority ("the CPA") utilizing Development Fund for Iraq ("DFI") funds.

---

[1] We also respectfully request that the Court enlarge the time for the Government to file its answer until 30 days after this motion has been resolved. Although this is but a partial motion to dismiss or for summary judgment, and we do not address the claims in counts IX, X, and XI of plaintiff's second amended complaint, regarding the "Phase II contract," the lion's share of alleged damages (approximately $10 million of the $13 million claimed) spring from those portions of the complaint that we challenge here.

2. Whether counts I, II, III, IV, and VIII of the complaint should be dismissed, and counts VI and VII be narrowed, because the Court possesses no jurisdiction to consider claims based upon contracts between Laudes Corporation ("Laudes") and the sovereign State of Iraq.

3. Whether counts I, II, III and VIII of the complaint should be dismissed because implied-in-fact contracts allegedly entered prior to the execution of an express contract upon the same subject matter are not cognizable.

4. Whether counts I, II, III, and VI of the complaint, alleging that the United States breached certain duties to award contracts to Laudes or to otherwise provide it money, should be dismissed because they seek to enforce promises that no officer or agent of the United States could have had the authority to make.

5. Whether count VI of the complaint, estoppel, must be dismissed because this Court does not possess jurisdiction to consider an estoppel claim.

6. Whether count V of the complaint, alleging fraud in the inducement, is precluded from consideration by this Court because it sounds in tort.

7. Whether count V of the complaint, seeking quantum meruit damages, should be dismissed because it is based upon an implied-in-law contract.

8. Whether count V of the complaint, alleging fraud in the inducement, is precluded because the allegedly wrongfully withheld information was public knowledge.

## STATEMENT OF THE CASE

I. Nature Of The Case

This case involves two contracts to perform construction and "life support" services[2] at the Baghdad Public Safety Officer's Academy in Iraq. This motion addresses only the first contract. The first contract ("the Phase I contract") was entered between Laudes and the CPA on June 20, 2004. Comp. ¶ 56.[3] The second contract ("the Phase II contract") was entered between Laudes and the Joint Contracting Command ("the JCC") on August 5, 2004. Comp. ¶ 104. Both contracts included provisions setting limits upon the amount of money that could be obligated upon them, and, in both contracts, Laudes billed substantially more than these monetary limits. Comp. ¶¶ 175, 177. Laudes generally asserts that the reasons for its exceeding the monetary limits upon the Phase I and II contracts were the responsibility of the United States. See generally Comp. ¶¶ 204 - 289.

Counts I, II and III of the complaint allege that the United States breached implied-in-fact contracts with Laudes relating to the Phase I contract. Count I of the complaint alleges that, after June 28, 2004, the parties agreed that the United States would place additional United States Government appropriated funds upon the Phase I contract. Comp. ¶ 209. The implied-in-fact contract alleged in count II of the complaint is that the United States would issue a new contract to Laudes for construction services that had been originally procured in the Phase I contract. Comp. ¶ 218. Count III of the complaint alleges that the United States possessed the authority to

[2] "Life support" services include such things as fire protection services, motor pool operations, food services, medical support, and maintenance services. Comp. ¶ 41.

[3] "Comp .¶ __" refers to a paragraph of Laudes's "Second Amended Complaint."

place additional Iraqi funds upon the Phase I contract, even after the return of sovereignty to the state of Iraq, and that the United States had an implied-in-fact contract to add Iraqi funds to the Phase I contract. Comp. ¶¶ 225-26.

Count IV of the complaint alleges that the United State abused its discretion by failing to "definitize" the Phase I contract. Comp. ¶ 236. Here, Laudes appears to be alleging that, even after the transfer of the Phase I contract to the responsibility of the IIG, under international law, the United States still possessed the authority to alter the Phase I contract to either reduce Laudes's responsibilities or increase its payment or to do both. See id.

Count V of the complaint alleges that the United States fraudulently induced Laudes to enter the Phase I contract by implying that it could add sufficient funds to the Phase I contract to pay for the performance of the contract. Comp. ¶ 241.

Count VI of the complaint alleges that the United States, by the conduct of its employees, is estopped from failing to add "additional" funds to the Phase I contract. Comp. ¶¶ 249-52.

Count VII of the complaint alleges that the United States breached its contractual duty of good faith and fair dealing by transferring the Phase I contract to the Iraqi government, with the knowledge that the "not to exceed" price was insufficient to compensate Laudes for the work upon the Phase I contract. Comp. ¶ 257.

Count VIII of the complaint alleges that the United States repudiated the alleged implied-in-fact contract to modify the Phase I contract by definitizing the price of the contract at $26,000,000. Comp. ¶ 264-66.

II. Statement Of Facts

The United States incorporates by reference Defendant's Proposed Finding Of Uncontroverted Facts ("DPFUF"), filed separately with this brief, as its statement of facts.

## ARGUMENT

All claims relating to the Phase I contract should be dismissed because such claims are not within the jurisdiction of this Court. Assuming, for the purposes of this motion alone that a contract with the CPA could be considered to be a contract with the United States, the fact that no appropriated funds are available to pay a damages award precludes the Court's exercise of jurisdiction over CPA contracts utilizing Iraqi money, such as the Phase I contract.

Other independent grounds support dismissal of counts of the complaint related to the Phase I contract. As of June 28, 2004, the Phase I contract became a contract between Laudes and the sovereign State of Iraq; the United States is not a party to it and, thus, this Court does not possess jurisdiction over any actions relative to the Phase I contract taken subsequent to June 28, 2004. Additionally, Laudes has presented claims not sustainable in this Court: First, Laudes's claims in counts I, II, III and VIII of its complaint, that the United States violated implied-in-fact contracts with Laudes, should be dismissed because they are precluded by the terms of the express Phase I contract over the same subject matter. Moreover, because, as a matter of law, no Government official would have been authorized to make the promises alleged, Laudes's implied-in-fact contract claims are untenable by virtue of being unlawful. Next, Laudes's claim of promissory estoppel is unavailable because this Court does not possess jurisdiction to consider such claims. Finally, Laudes's claim of fraud in the inducement, made in count V of its complaint, is not sustainable because this Court is precluded from hearing claims against the

United States sounding in fraud; the remedy sought requires an implied-in-law contract, forbidden in this Court; and this claim is premised upon the alleged withholding of information that was publicly available.[4]

I. The Standard Of Review

RCFC 12(b)(6) provides that the Court should dismiss claims when, in view of the record presented, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957)(citations omitted). For jurisdictional challenges, brought pursuant to RCFC 12(b)(1), the plaintiff bears the burden of establishing jurisdiction. McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936). A plaintiff must establish jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); Alaska v. United States, 32 Fed. Cl. 689, 695 (1995), appeal dismissed, 86 F.3d 1178 (Fed. Cir. 1996).

If, in the alternative, the Court considers this motion (or portions of it) as a motion for partial summary judgment, the familiar standards of summary judgment need only a brief re-statement here. The procedure of summary judgment is properly regarded not as a disfavored shortcut, but rather as an integral part of the Court rules as a whole, designed to secure a just, speedy and inexpensive determination of every action. Spirit Leveling Contractors v. United States, 19 Cl. Ct. 84, 89 (1989)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)); accord Sweats Fashions, Inc. v. Pannill Knitting, Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987).

[4] We note that there are further potential defenses available to the Government in this case, such as the "sovereign acts" doctrine and limitations upon the duty of good faith and fair dealing. We do not waive these defenses by choosing not to advance them here.

"The focus in determining whether summary judgment is appropriate is the lack of disputed material facts. A material fact has been defined as a fact that will make a difference in the outcome of a case." Curtis v. United States, 168 F. Supp. 213, 216 (Ct. Cl. 1958), cert. denied, 361 U.S. 843 (1959). Stated differently, only disputes over facts that might affect the outcome of a suit will properly prevent an entry of judgment. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).

## II. No Actions Related To The Phase I Contract Are Currently Subject To The Tucker Act

The limitations upon the Court's authority pursuant to the Tucker Act preclude holding the United States Government responsible in this Court for actions taken by the CPA during its existence when it was administering DFI-funded contracts. This is because there are simply no funds appropriated by Congress with which to pay any of the CPA's liabilities upon DFI-funded contracts and Congress never assigned the CPA's liabilities to any successor agency.[5]

This argument is analytically similar to the "NAFI doctrine," in which Government agencies that do not receive funding from Congress, and which are separated from general Federal revenues, are generally deemed not to be subject to the Court's jurisdiction. See, e.g., AINS v. United States, 365 F.3d 1333 (Fed. Cir. 2004). In AINS, the United States Court of

[5] It is not necessary at this time to determine whether the CPA was an agency or instrumentality of the United States. The United States District Court for the Eastern District of Virginia has held that the CPA was not an instrumentality of the United States. United States, ex rel. DRC v. Custer Battles, 444 F. Supp. 2d. 678, 689 (E.D.Va. 2006). Custer Battles, however, has been appealed to the United States Court of Appeals for the Fourth Circuit and we anticipate that there will be argument presented in that appeal that the CPA was, in fact, an instrumentality of the United States – at least for purposes of the False Claims Act. Of course, if the view of the district court in Custer Battles should be found persuasive, it would prove dispositive to counts I through VIII of Laudes's complaint, compelling their dismissal, and we reserve the right to advance further defenses, consistent with the results of the Custer Battles appeal, should we deem it appropriate.

Appeals for the Federal Circuit ("the Federal Circuit") explained the origins of the NAFI doctrine and set forth a four-part test to use in determining whether this Court could entertain claims against a particular Government agency. 365 F.3d at 1342. The AINS four-part test is not directly applicable to the CPA because the test was crafted in such a way as to be applicable to Government agencies with enabling statutes, see 365 F.3d 1342-43, unlike the CPA, which was established by the Coalition powers pursuant to the Laws of War. See DPFUF 1-2. Nevertheless, the same underlying reasoning supporting the NAFI doctrine leads to the conclusion that there is no basis to bring suit against the United States for alleged wrongs of the CPA.

The cornerstone of the NAFI doctrine is the notion that Tucker Act "[j]urisdiction can only be exercised . . . over cases in which appropriated funds can be obligated." L'Enfant Plaza Properties, Inc. v. United States, 668 F.2d 1211, 1212 (Ct. Cl. 1982); see also AINS, 363 F.3d at 1336. CPA contracts involving DFI funds are not "cases in which appropriated funds can be obligated" because DFI funds were not appropriated funds, and the CPA's responsibility for DFI contracts was transferred to the IIG, as opposed to a United States Government agency. Moreover, there is no basis for holding a United States agency responsible for payment because the CPA no longer exists and Congress took no action to assign liability for such actions by the CPA to any follow-on agency.

The case here is in many ways similar to that presented in ASEDAC v. Panama Canal Comm'n, 453 F.3d 1309 (11th Cir. 2006). In ASEDAC, former employees of the United States brought action in district court against the Panama Canal Commission ("PCC") and the Office of Transition Administration ("OTA") seeking benefits allegedly owed to them under the Panama

Canal Treaty and its enabling legislation. Id. at 1311. After the suit was filed, but before the district court resolved a pending motion to dismiss, Congress dissolved the PCC and OTA. Id. at 1312. The district court dismissed the case, finding that the cause of action had "abated" upon the dissolution of the PCC and OTA, under common law principles applicable to wholly-owned United States corporations. Id.

The United States Court of Appeals for the Eleventh Circuit affirmed this action in ASEDAC. In large part, the Eleventh Circuit opinion was based upon the fact that the explicit congressional transfer of the PCC's liabilities to the General Services Administration ("the GSA") did not constitute a waiver of the GSA's sovereign immunity. See 453 F.3d at 1315-16. The Eleventh Circuit also made the point that, for litigation to continue against any successor entity, Congress was required to state so explicitly:

> When Congress dissolves or terminates a government agency, commission, or corporation and intends for pending litigation to continue, it expressly provides for the non-abatement of pending suits by or against the dissolved entity and designates a successor to stand in the shoes of the entity for purposes of the litigation.
>
> – – –
>
> These statutes [(the Eleventh Circuit had provided examples of statutes transferring liability for suits)] convince us that when Congress intends for pending litigation to continue unabated against a successor entity, it does so expressly.

453 F.3d at 1316.

Although the CPA certainly was not a United States-owned corporation, like the PCC, the Eleventh Circuit's discussion regarding pending litigation is dispositive here. Whatever the CPA's status as an instrumentality of the United States, numerous facts preclude the liability of the United States Government for its actions upon DFI-funded contracts: (1) the CPA was not

established by Congress, thus there is no enabling statute addressing its use of appropriated funds; (2) it no longer exists; (3) Congress did not in any way transfer liability for suits relating to its actions to any successor agency; and (4) such responsibility as there was for the DFI-funded contracts (which, notably, were not reliant upon appropriated funds,[6] and affirmatively stated that no appropriated funds would be obligated under the contract, see DPFUF 19), was transferred, in whole, to the IIG. In such circumstances, there is no basis for this Court's obligating appropriated funds for any cause of action that Laudes brings relating to the Phase I contract.

Accordingly, the Court should dismiss counts I through VIII of the complaint, which all rest upon actions of the CPA, for lack of jurisdiction. In the alternative, the Court should enter summary judgment in favor of the United States upon these grounds.

## III. All Actions Regarding The Phase I Contract Taken Subsequent To June 30, 2004, Are Attributable To The Government Of Iraq, Not The United States, And Thus Not Within The Ambit Of The Tucker Act

As demonstrated in our DPFUF, upon its dissolution, the CPA transferred all Development Fund of Iraq ("DFI") -funded contracts to the Iraqi Interim Government ("IIG"). DPFUF 16. All actions undertaken by United States personnel regarding DFI-funded contracts were thus upon behalf of the State of Iraq and the authority of American personnel was sharply limited as demonstrated by the letter from the IIG Finance Minister and the subsequent direction

[6] The non-appropriated source of the funding of DFI contracts is of more than casual interest. In the portion of the Contract Disputes Act relating to payment of judgments, Congress provided for reimbursement to the Judgment Fund "by the agency whose appropriations were used for the contract" 41 U.S.C. § 612(c), indicating that, except for the military exchanges, addressed separately in 31 U.S.C. § 1304(c)(1), Congress anticipated that judgments would be paired with contracts funded by Government appropriations.

to the field from the Program Management Office ("PMO").[7] Id. Although the complaint alleges that the United States still exercised sovereignty over Iraq and occupied that country after June 28, 2004, see, generally, Comp. ¶¶ 77-98, that is not the case. In particular, United Nations Security Council Resolution ("UNSCR") 1546, provided that, "by 30 June 2004, the occupation [of Iraq] will end and the Coalition Provisional Authority will cease to exist, and . . . Iraq will reassert its full sovereignty." A. 36, ¶ 2. The resolution also provided that, upon dissolution of the CPA, "funds in the [DFI] shall be disbursed solely at the discretion of the Government of Iraq." A. 37, ¶ 24.

Actions taken upon behalf of the IIG by persons acting as its agents do not support a suit in this Court. The relevant portion of the Tucker Act, which provides this Court's jurisdiction, only applies to "express or implied contract[s] with the United States." 28 U.S.C. 1491(a)(1) (emphasis added). The Phase I contract has plainly been a contract with the sovereign State of Iraq since the dissolution of the CPA, thus this Court does not possess jurisdiction to entertain complaints of actions taken upon the Phase I contract after June 28, 2004. Accordingly, counts I, II, III, IV, and VIII of the complaint, which refer exclusively to actions taken (or not taken) after

---

[7] National Security Presidential Directive ("NSPD") 36, cited in Laudes's complaint, Comp. ¶ 46, did not purport to transfer fiscal responsibility for IIG contracts to the United States, but provided for "acquisition and project management support" to the IIG. A. 112-14. ("A.__" refers to a page of the appendix following our DPFUF"). This is consistent with the actions undertaken by the PMO, where it recognized that its officers' authority with respect to IIG contracts was sharply limited. A. 82.

June 28, 2004[8], should be dismissed, and the Court should not consider alleged bad actions by the United States after that time in counts VI and VII of the complaint.

Finally, to the extent that Laudes alleges that the obligations of the United States to manage and be financially responsible for the Phase I contract after the transfer of sovereignty to Iraq are based upon International Treaty (e.g., the Fourth Geneva Convention), see Comp. ¶¶ 226, 236, such claims are not cognizable in this Court. 28 U.S.C. § 1502 ("[T]he United States Court of Federal Claims shall not have jurisdiction of any claim against the United States growing out of or dependent upon any treaty entered into with foreign nations.").

## IV. Laudes's Claims Regarding Alleged Contracts-Implied-In-Fact Prior To The Execution Of the Phase I Contract Are Not Cognizable

Counts I, II, III, and VIII of Laudes's complaint may be read to allege that, prior to Laudes's entering into the Phase I contract, it entered implied-in-fact contracts with the United States relating to future changes to the Phase I contract. See Comp. ¶¶ 204-29; 259-67. As a simple matter of law, however, "[t]he existence of an express contract precludes the existence of an implied contract dealing with the same subject, unless the implied contract is entirely unrelated to the express contract." Atlas Corp. v. United States, 895 F.2d 745, 754-55 (Fed. Cir. 1990) (citing ITT Fed. Support Services v. United States, 531 F.2d 522, 588 n.12 (Ct. Cl. 1976). Here, to the extent that they were made prior to the transfer of the Phase I contract to the IIG, the alleged implied-in-fact contracts pre-dated the Phase I contract and dealt with the subject of how

[8] Count VIII of the complaint, Repudiation, alleges that the United States repudiated an implied-in-fact contract by conduct that occurred on February 13, 2004. Comp. ¶¶ 264-65. We assume this is a typographical error, since the Phase I contract was not signed until some four months later. If this is not an error, then count VIII of the complaint is nonsensical and should be dismissed because it is logically impossible to repudiate a contract by conduct that occurred prior to its existence.

much money would be obligated for the life support services and construction provided by the Phase I contract – they were certainly related. Indeed, the Phase I contract directly specified that, "No funds, appropriated or other, of any Coalition country, will be obligated under this contract," DPFUF 19, directly contradicting the allegation presented in count I of the complaint, that the United States would obligate additional United States Government funds to the Phase I contract. Comp. ¶ 209.

Accordingly, such alleged implied-in-fact contracts cannot be considered by this Court and should be dismissed pursuant to RCFC 12(b)(6). Atlas, 895 F.2d at 754-55.

## V. Laudes's Claims Alleging The Existence Of Implied-In-Fact Contracts Promising That It Would Be Awarded Additional Contracts And Funding, And That The United States Was Estopped From Not Providing It Money Are Precluded By Law

Counts I and III of the complaint, alleging implied-in-fact contracts to add more money to the Phase I contract; count II of the complaint, alleging an implied-in-fact contract to award a separate construction contract to Laudes; and count VI of the complaint, alleging that the United States was estopped from not giving Laudes more money, all fail for the same reason: they attempt to impose obligations upon the United States that no officer or agent was entitled to undertake. We demonstrate here that, because "the United States is neither bound nor estopped by the acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit," Office of Personnel Management v. Richmond, 496 U.S. 414, 420 (1990) (quoting Utah Power and Light Company v. United States, 243 U.S. 389, 408-409 (1917)), the Government cannot be held liable for these alleged promises here.

First, count I of the complaint, alleging that the United States had made an implied-in-fact contract to add United States funds to the Phase I contract, see Comp. ¶ 209, is essentially an allegation that the United States would create an additional contractual vehicle to pay Laudes. Without subjecting the matter to a "full and open competition," or having the appropriate official issuing a written finding justifying the award without such competition, agents or officers of the United States may not make sole-source awards without violating the Competition in Contracting Act ("CICA"), 10 U.S.C. § 2304. See, e.g., Filtration Development Co. v. United States, 60 Fed. Cl. 371, 381 (2004). Thus, under law, agents or officers of the United States could not have promised the award of a new contractual vehicle using United States appropriated funds without violating CICA, and the Government may not be held liable for the alleged implied-in-fact contract referenced in Count I of Laudes's complaint. OPM v. Richmond, 496 U.S. at 420. Laudes cannot claim that the appropriate United States Government officer would have issued a written justification in support of such a sole source award, because "assurances by a Government official do not establish an implied-in-fact contract unless the parties complete all steps required by agency regulations." Eliel v. United States, 18 Cl. Ct. 461, 466-67 (1989) (citing Empresas Electronics Walser, Inc. v. United States, 650 F.2d 286 (Ct. Cl. 1980)).

The implied-in-fact contract alleged in count II of the complaint, to award a separate contract to Laudes for construction work, Comp. ¶ 218, is precluded by law for the same reason that count I must fail: it alleges a promise of the United States to make a sole-source procurement (for construction services) which, as we demonstrated above, is contrary to CICA and not within the authority of Government agents to perform.

The implied-in-fact contract alleged in count III of the complaint, to add more Iraqi funds to the contract, see Comp. ¶¶ 225-26, similarly demands of the United States more than its agents were able to authorize. At the point that additional DFI funding was necessary to match Laudes's invoices upon the Phase I contract, the contract had already became a contract with the IIG and, as Iraqi Minister of Finance directed, the IIG's American agents did not possess authority to increase costs upon contracts. DPFUF 20-22. Thus, the United States possessed no authority to add the additional funds to the Phase I contract and cannot be held liable for this alleged failure. OPM v. Richmond, 496 U.S. at 420.

Finally, Laudes's claim in count VI of its complaint, that the United States should be estopped from "refusing to add additional funds" to the Phase I contract, Comp. ¶ 252, fails for the same reason that count III fails: no United States Government officer or agent possessed the authority to add Iraqi money to this Iraqi contract at the time that Laudes would have wished for more.

Because there was no authority under law for any of the promises allegedly made in the three alleged implied-in-fact contracts or the estoppel claim, the United States cannot be held liable for them and these claims must be dismissed pursuant to RCFC 12(b)(6), or partial summary judgment entered in favor of the United States.

VI. Count VI Of Laudes's Complaint, Estoppel, Must Be Dismissed For Lack Of Jurisdiction

In count VI of its complaint, Laudes alleges that the United States should be "estopped from refusing to add additional funds to the Phase I Contract." Comp. ¶ 252. This Court, however, "has no jurisdiction over claims for promissory estoppel, as it requires a finding of a contract implied-in-law against the Government, for which there has been no waiver of

sovereign immunity." Sinclair v. United States, 56 Fed. Cl. 270, 281 (2003) (citing Hercules, Inc. v. United States, 516 U.S. 417 (1996)). Accordingly, count VI of the complaint should dismissed pursuant to RCFC 12(b)(1).

VII. Count V Of Laudes's Complaint, Fraud In The Inducement, Is Outside Of This Court's Jurisdiction Because It Sounds In Tort

In count V of its complaint, Laudes alleges that it entered into the Phase I contract as a result of "fraudulent representations" of the United States, and it seeks quantum meruit damages. Comp. ¶¶ 240-43. Because claims of Fraud in the Inducement sound in tort, they are not within the Court's jurisdiction.

> The Tucker Act expressly provides that this Court
>
> shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department or any express or implied contract with the United States . . . in cases not sounding in tort.

28 U.S.C. § 1491(a)(1)(underline added). This Court "does not have jurisdiction to hear claims against the United States for damages arising in tort." Zhengxing v. United States, 71 Fed. Cl. 732, 739 (2006).

It is well-settled that a claim of misrepresentation is a tort. United States v. Neustadt, 366 U.S. 696, 706 (1961). It also is beyond dispute that Laudes alleges a misrepresentation. Moreover, as the United States Court of Claims held, "claims based on negligent misrepresentation, wrongful inducement, or the careless performance of a duty allegedly owed, are claims sounding in tort." Aetna Cas. and Sur. Co. v. United States, 655 F.2d 1047, 1059 (Ct. Cl. 1981). Finally, even where a contract exists between the parties, an action based upon an allegation that Government officials committed misfeasance or malfeasance is a suit sounding in

tort that is not within the jurisdiction of this Court. Smithson v. United States, 847 F.2d 791, 794 (Fed. Cir. 1988) (FmHA loan agreement); McCormick v. United States, 227 Ct. Cl. 661, 665 (1981) (FmHA loan agreement); Transcountry Packing Co. V. United States, 568 F.2d 1333, 1336-37 (Ct. Cl. 1978) (bids for contracts).

The law in this circuit is well-illustrated in Somali Development Bank v. United States, 508 F.2d 817, 821 (Ct. Cl. 1974). In Somali Development, in explaining the basis for its determination that claims of negligent misrepresentation and wrongful inducement are claims sounding in tort, even when a contract exists between the parties, the Court of Claims reviewed a decision of a district court in which a plaintiff alleged, essentially as Laudes alleges here, that it "had been deluded and hoodwinked into an unconscionable bargain." Somali Development, 508 F.2d at 822. The claims were found to be torts of "deceit," and were dismissed for lack of jurisdiction Id. In so holding, the Court of Claims expressly declined to follow the opinion of one dissenting judge, who would have entertained the claim based upon a theory of breach of contract. 508 F.2d 823-24.

Although the Court has recognized an exception to the bar upon hearing tort claims, that exception is narrow and applies in instances where there is a connection between the misrepresentation and a contractual obligation, that is, a contractual undertaking, of the United States. L'Enfant Plaza Properties, Inc. v. United States, 645 F.2d 886, 892 (Fed. Cir. 1981). To state a claim of breach of contract, "[t]he wrong complained of" must be based upon "the Government's breach of promise." Burtt v. United States, 176 Ct. Cl. 310, 314 (1966). The United States Court of Appeals for the Federal Circuit has reiterated the requirement that a claim which otherwise sounds in tort, may be heard as a breach of contract, only where the claim flows

from a broken contractual promise. Wood v. United States, 961 F.2d 195 (Fed. Cir. 1992) (promise to provide airplane certificates); see Awad v. United States, 301 F.3d 1367, 1373 (Fed. Cir. 2002) (promise to provide passport).[9]

Here, Laudes complains of representations allegedly made regarding the authority of the United States to add funds to the Phase I contract. Comp. ¶ 241. This claim is not based upon any promise or undertaking contained in the Phase I contract. As such, it does not state a claim of breach of contract. See D.V. Gonzalez Electric & General Contractors, Inc. v. United States, 55 Fed. Cl. 447 (2003) (claim that estimated cost was negligently misrepresented not within Court's jurisdiction). Instead, this claim involves allegations of malfeasance by Government officials, a claim sounding in tort. Smithson, 847 F.2d at 794; McCormick, 227 Ct. Cl. at 665; see Transcountry Packing Co., 568 F.2d at 1336-37; see Englert v. United States, 38 Fed. Cl. 366, 373 (1997)(citing Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997) ("this court has no jurisdiction to entertain allegations of fraudulent actions of government employees")); but see Badgley v. United States, 31 Fed. Cl. 508, 513-14 (1994) (finding that the Court possessed jurisdiction over misrepresentation claims relating to contract formation).

## VIII. Count V Of Laudes's Complaint Must Be Dismissed Because It Seeks The Remedy Of A Contract Implied-In-Law

In count V of the complaint, alleging that the United States fraudulently induced Laudes into entering the Phase I contract, Laudes seeks to void the contract and make itself entitled to damages by virtue of a contract implied-in-law and its attendant quantum meruit damages.

---

[9] As explained in D.F.K. Enters., Inc. v. United States, 45 Fed. Cl. 280, 284 (1999), where a valid contract is alleged, the "relevant inquiry is whether there is a nexus between the alleged tortious conduct and some alleged contractual obligation."

See Comp. ¶ 244-45. Like claims of estoppel, discussed above, such claims, based upon a finding of a contract implied-in-law, are not within the Court's jurisdiction. Perri v. United States, 340 F.3d 1337, 1343 (Fed. Cir. 2003). In Perri, the Federal Circuit recognized that claims of quantum meruit had survived in prior cases, but distinguished those cases as involving the Government's attempting to void an express contract after it had received services. Id. at 1343-44. We are presented with no such case here, because the Government is not seeking to void the terms of any express contract with Laudes. Accordingly, this claim must dismissed for lack of jurisdiction.

## IX. Count V Of Laudes's Complaint, Fraud In The Inducement, Is Unsupportable Because Limitations Upon Future Authority To Modify DFI-Funded Contracts Were Publicly Known At The Time The Phase I Contract Was Entered

The alleged representations (implicit and explicit) supporting the misrepresentation claim in count V of Laudes's complaint were that the United States would maintain the authority to amend the Phase I contract to add funds to it after the transfer of sovereignty to the IIG on June 28, 2004. Comp. ¶ 242. This alleged misrepresentation cannot withstand scrutiny because two public actions had occurred to put Laudes upon notice that the United States would lose such authority upon the return of sovereignty to Iraq. First, UNSCR 1546, which provided that disbursement of DFI funds would be "disbursed solely at the direction of the Government of Iraq," A. 37, ¶ 24, was adopted on June 8, 2004, 12 days before the Phase I contract was signed. Second, CPA Memorandum 15, which specified that DFI-funded contracts would become the responsibility of the IIG Ministry of Finance, was signed on June 18, 2004, DPFUF 16, and posted upon the publicly-available CPA website no later than the next day, DPFUF 19, which was June 19, 2004. Since the Phase I contract was signed on June 20, 2004, DPFUF 20, the UN's

direction and the CPA's intention to transfer all authority over DFI-funded contracts to the IIG, was public knowledge prior to Laudes's finalizing the Phase I contract with the CPA.

Accordingly, Laudes cannot now claim that it was not upon notice that authority over the Phase I contract would devolve upon the IIG at the time of the imminent dissolution of the CPA.

CONCLUSION

For the reasons stated herein, Counts I through VIII of Laudes's complaint should be dismissed and judgment entered in favor of the United States upon those claims.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/J. Reid Prouty
J. REID PROUTY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 305–7586
Fax: (202) 514-7969

May 31, 2007