**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| LAUDES CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 07-4C<br><br>(Judge Thomas C. Wheeler) |

**AFFIDAVIT OF MARK G. JACKSON IN SUPPORT OF PLAINTIFF'S MOTION FOR DISCOVERY UNDER RCFC 56(f)**

I, Mark G. Jackson, do hereby state and declare as follows:

1. I am the attorney for Plaintiff Laudes Corporation, am over the age of 18, have personal knowledge of the matters contained herein, and am competent to testify thereto.

2. Set forth below, with respect to each argument raised by Defendant in its Motion for Partial Summary Judgment, are: (a) the factual discovery sought by Plaintiff; (b) the basis for Plaintiff's belief that the facts sought are reasonably expected to engender a genuine issue of material fact; and (c) the bases on which Plaintiff believes such discoverable facts exist.

3. Plaintiff has made a diligent effort to ascertain the facts sought. I have reviewed all of the documents in Plaintiff's possession relating to the Phase 1 Contract, including electronic mail exchanged with or received from Defendant. Plaintiff has interviewed certain government personnel and I have reviewed the notes of those interviews and discussed those interviews with the individual who conducted them on behalf of Plaintiff. I have also reviewed all public information known to Plaintiff relating to the causes of action set forth in the complaint.

4. Plaintiff could not have reasonably discovered sooner the facts described herein because there has been no discovery at all in this case and the facts sought are within Defendant's control. Instead, Defendant filed a motion for partial summary judgment in response to the complaint.

As a result, Plaintiff has been denied access to all of the information that resides solely with the Defendant.

Defendant's Claim that "No Actions Related to the Phase I Contract Are Currently Subject To The Tucker Act"

5. In order to adequately defend against Defendant's Motion for Partial Summary Judgment on this basis, Plaintiff seeks the following discovery:

a. Instances in which the CPA used appropriated funds and either DFI, vested or seized funds on the same contract.

b. The method and criteria by which the CPA's Program Review Board decided to allocate the funds available to it to specific projects and/or contracts.

c. The duties and responsibilities of the CPA prior to June 30, 2004.

d. The duties and responsibilities of the United States Mission in Baghdad after June 30, 2004.

e. The duties and responsibilities of the PCO after June 30, 2004.

f. The extent to which the PCO sought or obtained either advice, consent or permission from the IIG after June 30, 2004, regarding the administration of DFI-funded contracts.

g. Whether the PCO settled or otherwise resolved any claim filed by a contractor arising from or relating to a DFI-funded contract and, if so: (i) what funds were used; and (ii) whether the IIG provided any input in the settlement or resolution.

6. These facts are reasonably expected to engender a genuine issue of material fact as to this basis for Defendant's motion because its motion is based upon the implied assertion that the CPA and/or the PCO could not use both appropriated and DFI funds on the same contract and the express assertion that there was no successor to the CPA. To the extent the CPA and/or the

PCO actually used both DFI and appropriated funds to fund a contact, such facts would directly contradict Defendant's assertion that no appropriated funds are available for DFI-funded contracts. Further, to the extent the US Mission in Iraq and/or the PCO acting as its agent, assumed duties and responsibilities relating to contract administration, award and dispute resolution, these facts would also contradict Defendant's assertion that there is no successor to the CPA.

7. Plaintiff bases its belief that such discoverable facts exist initially upon CPA Memorandum 3, which gave the PRB the authority and responsibility to develop a funding plan using all of the fund resources available to it, including both appropriated and DFI funds. That memorandum does not prohibit the PRB from allocating different funds to the same project. In addition, Plaintiff is aware of at least one instance in which the PCO funded a contract with both appropriated funds and DFI funds. Plaintiff has reviewed all of published minutes of the PRB, which state in summary fashion the funds to be allocated to projects. However, these minutes do not disclose the method or criteria by which the PRB made its recommendations. Plaintiff assumes it was not a random or illogical process. As a result, Plaintiff believes there is likely to exist some guidance prepared for and followed by the PRB to allocate funds to specific projects.

Defendant's Claim that "All Actions Regarding the Phase I Contract Taken Subsequent To June 30, 2004, Are Attributable To The Government of Iraq, Not The United States, And Thus Not Within The Ambit Of The Tucker Act"

8. In order to adequately defend against Defendant's Motion for Partial Summary Judgment on this basis, Plaintiff seeks the following discovery:

a. The purposes and contracts for which the PCO used DFI funds after June 30, 2004.

b. Whether the PCO modified any DFI-funded contract (other than the Phase I Contract) after June 30, 2004 and, if so, under what circumstances and upon what authority.

c. Whether the IIG and the CPA and/or the PCO specifically discussed transfer of DFI-funded contracts to the IIG as of June 30, 2004.

d. Whether there exist documents exchanged between the IIG and the CPA and/or the PCO relating to transfer of DFI-funded contracts to the IIG as of June 30, 2004.

e. Whether the United States has previously taken the position that DFI-funded contracts were transferred to the IIG as of June 30, 2004 and, if so, in what context.

f. Whether the United States had previously taken a position contrary to its current position that DFI-funded contracts were transferred to the IIG as of June 30, 2004.

g. The instructions given to PCO personnel, if any, regarding: (i) the modifications to the scope of work under the Phase I Contract directed and accepted by the PCO; (ii) the attempts to definitize the Phase I Contract; (iii) the unilateral modification to the Phase I Contract attempting to definitize the Phase I Contract at a price below the NTE; (iv) the attempts to issue a final decision by the PCO; and (v) the final decision issued by the United States denying Plaintiff's certified claim.

h. Documents describing internal interpretations by the CPA and/or the PCO and justifications for such interpretations of the affect of Resolution 1546 on the PCO's ability to modify DFI-funded contracts by adding appropriated funds to said contract.

9. These facts are reasonably expected to engender a genuine issue of material fact as to this basis for Defendant's motion because each of these areas of inquiry is relevant to the determination as to whether the Phase I Contract was in fact transferred to the IIG as of June 30,

2004. To the extent the PCO acted inconsistently with transfer of DFI-funded contracts, this will create a genuine issue of material fact as to whether transfer occurred.

10. Plaintiff bases its belief that such discoverable facts exist upon several facts, including: (a) Plaintiff is aware of at least one e-mail in which PCO personnel expressed confusion as to the PCO's authority to place additional funds on the Phase I Contract after June 30, 2004; (b) the existence of CPA Regulation 11 and CPA Memorandum 15, both of which address the issue of funding for DFI-funded contracts after June 30, 2004 and leave room for interpretation; (c) the repeated modifications to the Phase I Contract directed by Defendant after June 30, 2004. Also, Plaintiff assumes (as it must) that Defendant's actions were neither irrational nor done in violation of any official policy, regulation or guidance. Accordingly, the information sought through discovery likely exists.

Defendant's Claim that "Laude's Claims Alleging The Existence of Implied-in-Fact Contracts Promising That It Would Be Awarded Additional Contracts And Funding, And That The United States Was Estopped From Not Providing It Money Are Precluded By Law."

11. In order to adequately defend against Defendant's Motion for Partial Summary Judgment on this basis, Plaintiff seeks the following factual discovery:

a. The purposes and contracts for which the PCO used DFI funds after June 30, 2004.

b. The contemporaneous interpretation adopted and used by Defendant of the phrase "the multinational force shall have the authority to take all necessary measures to contribute to the maintenance of security and stability in Iraq" as it appears in Resolution 1546.

c. The circumstances in which Defendant actually relied on the phrase in (ii)(b) above to take specific action and the action taken.

d. The importance of training and equipping the IPS as a part of Defendant's overall strategy in Iraq.

e. The method and criteria used by the CPA to determine "the total amount of outstanding contractual liability against the Development Fund for Iraq" as that phrase is used in CPA Regulation 11.

f. The specific contracts considered by the CPA to determine "the total amount of outstanding contractual liability against the Development Fund for Iraq" as that phrase is used in CPA Regulation 11.

g. Whether contracts that ought to have been included within the "total amount of outstanding contractual liability against the Development Fund for Iraq" as that phrase is used in CPA Regulation 11 were not included and, if so, why.

h. The basis for the $26 million NTE established by the CPA for the Phase I Contract.

i. The contract and all related correspondence between the CPA and the company who initially received the Phase I Contract.

j. Whether, after June 30, 2004, the IIG added additional funds the Central Bank of Iraq/Development Fund of Iraq/Transition sub-account and, if so, under what circumstances.

k. Whether the PCO attempted to comply with the requirements of the Competition in Contracting Act in awarding the Phase II Contract, which simply increased the number of students for whom Plaintiff was providing life support services under the Phase I Contract.

l. Whether the PCO performed any analysis of its modifications to the Phase I Contract to determine whether such modifications were outside the scope of the Phase I Contract.

12. These facts are reasonably expected to engender a genuine issue of material fact as to this basis for Defendant's motion because Defendant claims that the PCO lacked authority to enter into the implied-in-fact agreements set forth in counts 1 – 3 of the complaint and these facts are relevant to the determination as to whether such authority existed. If training the IPS was sufficiently important to the security in Iraq, pursuant to Resolution 1546, the MNF would have the authority to add additional DFI funds to the Phase I Contract. Further, if the CPA determined the total contractual liability for the Phase I Contract was $52 million, then sufficient funds ought to have been placed in the sub-account created for that purpose. In either event, the PCO would have had the authority to add additional DFI funds to the Phase I Contract, thereby creating a disputed issue of material fact.

13. Plaintiff bases its belief that such discoverable facts exist upon its knowledge and experience that Defendant had specific reasons and justifications for the actions it took with respect to the Phase I Contract. For example, Defendant certainly relied upon some reason for establishing the NTE of the Phase I Contract at $26 million. Further, Plaintiff knows that it took over the Phase I Contract after another contractor failed to perform. As a result, it believes documents relating to that contractor's performance exist. Plaintiff believes that Defendant, in issuing CPA Regulation 11, would have at least attempted to comply with its own regulation and that some analysis would have been performed in order to do so. Thus, that information is likely to exist as well. Finally, based on the declaration of Brigadier Mackay, there was apparently a

great deal of discussion within the CPA regarding the importance of training the IPS as it related to the overall security in Iraq Thus, it appears this information also likely exists.

<u>Defendant's Claim that "Count V of Laudes's Complaint, Fraud In The Inducement, Is Unsupportable Because Limitations Upon Future Authority To Modify DFI-Funded Contracts Were Publicly Known At The Time The Phase I Contract Was Entered"</u>

14. In order to adequately defend against Defendant's Motion for Partial Summary Judgment on this basis, Plaintiff seeks the following factual discovery

a. When CPA Memorandum 15 was actually placed on the CPA's website.

b. The purposes and contracts for which the PCO used DFI funds after June 30, 2004.

c. Whether the PCO modified any DFI-funded contract (other than the Phase I Contract) after June 30, 2004 and, if so, under what circumstances and upon what authority.

d. Whether the PCO made a request to the IIG for additional DFI funds to place on the Phase I Contract.

e. Whether the PCO made a request to the IIG for additional DFI funds to place on any other DFI-funded contract.

f. The contemporaneous interpretation adopted and used by Defendant of the phrase "the multinational force shall have the authority to take all necessary measures to contribute to the maintenance of security and stability in Iraq" as it appears in Resolution 1546.

g. The circumstances in which Defendant actually relied on the phrase in (b) above to take specific action and the action taken.

h. The importance of training and equipping the IPS as a part of Defendant's overall strategy in Iraq.

i. The method and criteria used by the CPA to determine "the total amount of outstanding contractual liability against the Development Fund for Iraq" as that phrase is used in CPA Regulation 11.

j. The specific contracts considered by the CPA to determine "the total amount of outstanding contractual liability against the Development Fund for Iraq" as that phrase is used in CPA Regulation 11.

k. Whether contracts that ought to have been included within the "total amount of outstanding contractual liability against the Development Fund for Iraq" as that phrase is used in CPA Regulation 11 were not included and, if so, why.

l. Documents describing internal interpretations by the CPA and/or the PCO and justifications for such interpretations of the affect of Resolution 1546 on the PCO's ability to modify DFI-funded contracts by adding appropriated funds to said contract.

15. These facts are reasonably expected to engender a genuine issue of material fact as to this basis for Defendant's motion because Defendant's argument is based not only upon the premise that Plaintiff had notice (at least constructive notice) of Resolution 1546 and CPA Memorandum 15, but that such notice would have informed Plaintiff that Defendant would not have the authority to place additional funds on the Phase I Contract after June 30, 2004 and the facts sought address both of those premises. The majority of the facts sought by Plaintiff are directed at the substance of the notice Defendant claims Plaintiff must have received and will show the accuracy and/or reasonableness of Defendant's assertion in that regard. For example, to the extent the PCO acted in a manner that was inconsistent with Defendant's argument, there

will exist a genuine issue of material fact as to whether it was even possible to receive the notice Defendant claims Plaintiff must have received.

16. Plaintiff bases its belief that such discoverable facts exist upon a variety of facts, including: (a) Defendant repeatedly modified the Phase I Contract after June 30, 2004; (b) documents in the public record emphasizing both the importance of training the IPS to the overall strategy in Iraq; (c) documents and statements in the public record concerning the limited extent to which the IIG actually possessed or wielded sovereign authority in Iraq during the relevant period; (d) the existence of CPA Regulation 11 and the creation of the sub-account; (e) the PCO's frequent reliance on relevant Federal Acquisition Regulations provisions and clauses even when not incorporated into contracts; and (e) the declaration of Brigadier Mackay.

Further says the affiant not.

DATED this 12th day of July, 2007, in Seattle, Washington.

By: ______________________
Mark G. Jackson, WSBA #18325

GARVEY SCHUBERT BARER
1191 Second Avenue, Suite 1800
Seattle, Washington 98101
(206) 464-3939
(206) 464-0125 – fax

SUBSCRIBED AND SWORN to before me this 12th day of July, 2007.

KATHLEEN P. CHAPMAN
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES 01-09-09

______________________
Notary Public for Washington
Residing at Everett, Washington
My Commission Expires 1/9/09

SEA_DOCS\851650